# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

PHILIP A. "BERT" CALLAIS            CIVIL ACTION

VERSUS

UNITED RENTALS NORTH AMERICA, INC.        NO. 17-312-BAJ-RLB

## ORDER

Before the Court is Plaintiff's Motion for an Order Compelling Discovery (R. Doc. 23) filed on July 31, 2018. Defendant filed its Opposition (R. Doc. 25) on August 21, 2018. Plaintiff filed a Reply (R. Doc. 29) on August 27, 2018. Oral argument was held on November 27, 2018. (R. Doc. 35). A follow-up telephone status conference was held on December 4, 2018. (R. Doc. 36). Defendant filed a Supplemental Memorandum (R. Doc. 37) on December 7, 2018 at the direction of the Court.

**I.     Background**

Plaintiff initiated this action with the filing of his Complaint (R. Doc. 1) on May 16, 2017. Plaintiff filed his Amended Complaint (R. Doc. 12) on September 17, 2017. As set forth in the pleadings, Plaintiff alleges that he began his employment with Defendant in September of 2013. (R. Doc. 12 at 1). He suffers from PTSD with sleep deprivation when overstressed, and arterial blockage in his legs, and Defendant subjected him to illegal discrimination, harassment, and retaliation as a result of his disability. (R. Doc. 12 at 1-2). Plaintiff's Amended Complaint chronicles various incidents of allegedly discriminatory treatment suffered by Plaintiff, culminating in claims brought under the Americans with Disabilities Act, the Louisiana Employment Discrimination Law, the Civil Rights Act for Handicapped Persons, and Louisiana's Whistleblower Act. (R. Doc. 12 at 17-18).

Defendant filed a Motion to Dismiss for Failure to State a Claim (R. Doc. 4) on July 19, 2017. On October 19, 2017, the district court issued its Ruling and Order (R. Doc. 18), granting in part and denying in part Defendant's Motion. As a result of the district court's Ruling and Order (R. Doc. 18), Plaintiff's claim for disability discrimination under the ADA and LEDL, his claim for failure to provide reasonable accommodations under the ADA and LEDL, and his claim for veteran discrimination under La. R.S. 23:331 remain.

Plaintiff propounded his First Interrogatories and Requests for Production of Documents (R. Doc. 23-4) to Defendant on November 30, 2017, containing 104 requests for production of documents. On June 14, 2018 and June 18, 2018, Plaintiff propounded his second and third sets of Interrogatories and Requests for Production of Documents (R. Doc. 25-1 and 25-2), collectively containing an additional 20 requests for production of documents. Defendant responded and supplemented its responses on various dates, but Plaintiff contests the sufficiency of those responses.

**II.     Law and Analysis**

    **A.     Legal Standard**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the

discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

A party must respond or object to a request for production within 30 days after service of the discovery. *See* Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests made pursuant to Rule 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**B.      Analysis**

Plaintiff appears to be seeking to compel responses to Requests for Production of Documents Nos. 6, 11, 14, 15, 24, 25, 26, 31, 33, 34, 37, 38, 39, 40, 41, 48, 55, 58, 59, 60, 61, 63, 64, 69, 94, 95, 96, 97, 98, 105, 108, 109, 110, 113, 116, 117, 118, 120, and 124, amounting to 40 of his 124 requests. After reviewing the substance of these requests, the briefing of the parties, and the arguments advanced at the November 27, 2018 hearing, the Court finds it appropriate to address Plaintiff's Motion by categories of information sought, as opposed to parsing the breadth and relevance of each individual request Plaintiff seeks to compel. To the extent the Court is ordering Defendant to produce additional responsive documentation in its possession, custody, or control, it shall do so in accordance with this Order.

### i.     Personnel Files of Comparators (Safety Violations, Vacation Requests and Authorizations)

Many of the Requests for Production seek information regarding alleged comparators or similarly situated employees.[1] This Court has generally found the production of entire personnel files unwarranted. *See, e.g., Roberts v. Lessard*, 2018 WL 1547342, at *4 (M.D. La. Mar. 29, 2018) (entire personnel file irrelevant because it "would contain materials outside of the scope of discovery."); *Braud v. Geo Heat Exchangers, L.L.C.*, 314 F.R.D. 386, 389-90 (M.D. La. Mar. 31, 2016) (finding "portions of the personnel file (minus confidential information)" relevant). This is, in part, because personnel files of non-party employees may contain sensitive information that has no relevance to the claims or defenses in the litigation, such as Social Security numbers and medical records or information, to name a few. Having said that, where a plaintiff alleges that he was treated differently that other employees, there may be some relevant information within the personnel files of comparators or similarly situated employees that would prove or disprove such an allegation.

At oral argument, counsel for Plaintiff identified the following four employees as potentially similarly situated: Brian Vaughn, Jeff Fields, Rosie Jackson, and Robert Stone.[2] As to those purported comparators, Plaintiff has alleged that he was treated differently in several ways. First, Plaintiff alleges that Defendant treated the vehicle repair requests and exercise of stop work authority of Vaughn, Fields, Jackson, and Stone more favorably than the vehicle repair requests and exercise of stop work authority of Plaintiff. (R. Doc. 12 at ¶¶ 19, 20). To the extent

---

[1] *See, e.g.*, Request for Production Nos.15 (vehicle repair requests), 24 (vehicle repair requests), 25 (vehicle repair requests), 26 (vehicle repair requests), 39 (driver scheduling), 40 (leave requests), 48 (stop work authority), 55 (leave requests), 58 (stop work authority), 59 (stop work authority), 60 (stop work authority), 69 (leave requests), and 96 (personnel files).

[2] Plaintiff's Motion also seeks personnel files for Everette Hatch and Justin Callagan (R. Doc. 23-8 at 21), but Plaintiff represented at the November 27, 2018 hearing that he no longer believed those employees were similarly situated and withdrew any request for their information.

the personnel files of Vaughn, Fields, Jackson, and Stone contain any information regarding vehicle repair requests or the exercise of stop work authority, that information is relevant and shall either be produced or Defendant shall provide a verification that no such information exists in the personnel files of the aforementioned persons.

Plaintiff also alleges that vacation or leave requests of similarly situated employees were treated more favorably than his vacation or leave requests, including time off for medical appointments, vacation, or other personal reasons. (R. Doc. 12 at ¶ 28, 29, 31). If there is evidence that would show that Plaintiff received unfavorable treatment regarding vacation and/or leave requests because of his disabled, non-veteran status, that information would be relevant. To the extent the personnel files of Vaughn, Fields, Jackson, and Stone contain any information about requests and/or authorization for vacation and/or leave, that information is relevant, and shall either be produced, or Defendant shall provide a verification that no such information exists in the personnel files of the aforementioned persons.

Plaintiff alleges that other similarly situated drivers, specifically Vaughn and Fields, were given proper training, but that Plaintiff was not. (R. Doc. 12 at ¶ 16). To the extent the personnel files of Vaughn and Fields contain information regarding driver training received by those employees, that information is relevant and discoverable. Defendant shall produce any and all information contained in the personnel files of Vaughn and Fields pertaining to the driver training received by each of them, or provide a verification that no such information exists in the personnel files of the aforementioned persons.

Lastly, with specific reference to Request for Production Nos. 97 and 98, Plaintiff seeks complaints made by Plaintiff, Fields, and Vaughn, and complaints made about Plaintiff, Fields, and Vaughn. (R. Doc. 23-4 at 27-28). The term "complaints" is not defined such that it is overly

broad because it could contain complaints pertaining to anything from performance to personal matters not relevant to this litigation, including complaints ultimately found to be unwarranted or unsupported and not resulting in any disciplinary action. However, to the extent the personnel files of Fields and Vaughn contain complaints made by or about Plaintiff or those identified comparators relating to on-the-job performance or safety violations that resulted in disciplinary actions, including write-ups maintained in those files, that information is relevant. Such information would show whether similarly situated employees were subject to favorable treatment in the form of dissimilar adverse employment actions. To the extent the personnel files of Vaughn, Fields, Jackson, and Stone contain any information about disciplinary actions taken by Defendant pertaining to job performance or safety violations, that information is relevant, and shall either be produced or Defendant shall provide a verification that no such information exists in the personnel files of the aforementioned persons.

It is to be noted that there are specific constraints to the production of personnel files of non-parties ordered herein. First, there remains a Protective Order in place (R. Doc. 21), which outlines procedures by which parties can designate certain documents or portions of documents confidential. Second, notwithstanding the Protective Order, the Court hereby advises the parties of specific types of information likely contained in personnel files that is to be either redacted or not produced at all, including personal identifying information (i.e., Social Security number, telephone number, address), medical information or histories, salary and benefits information. Lastly, at the November 27, 2018 hearing, counsel for Defendant requested that any third-party personnel information be permitted to be deemed "Attorney's Eyes Only." Considering the above referenced redactions and with the Protective Order limiting public dissemination of

sensitive materials, the Court finds this request to be unwarranted. Plaintiff should have the benefit of reviewing and discussing these documents with his attorney in preparing his case.

## ii. Vehicle Repair Documents

Plaintiff alleges that his vehicle repair requests were treated differently than the repair requests of other non-disabled, non-veteran employees. (R. Doc. 12 at ¶¶ 19, 20). And, Plaintiff propounded document production requests regarding vehicle repair requests, in an effort to obtain evidence that would support his allegations.[3] The Court has already determined the relevance of the vehicle repair requests in the preceding section, to the extent that information is contained in the personnel files of Plaintiff or his comparator employees. Outside of the personnel files, however, it is unclear from the briefing and representations made at the November 27 hearing how the vehicle repair requests were kept in the ordinary course of business, the potential volume of vehicle repair requests, and the complexity or burden of production of the relevant vehicle repair requests. Accordingly, the Court ordered counsel for Defendant to provide a report regarding vehicle repair records for the period beginning June 1, 2014 through July 31, 2016. (R. Doc. 35).

Counsel for Defendant provided detailed information regarding Defendant's general practice as to vehicle repair requests and records, which the Court then requested be memorialized in a supplemental brief, filed by Defendant on December 7, 2018. (R. Doc. 37). Therein, Defendant represents that, from December 2015 forward, vehicles are inspected daily by their driver on a handheld electronic device, and those inspection checklists are maintained for three (3) months before being automatically deleted. (R. Doc. 37 at 2). Insofar as drivers requested repairs to vehicles, Defendant represents that electronic work orders are entered and

---

[3] *See, e.g.*, Request for Production Nos. 15, 24, 25, and 26.

7

maintained on their RentalMan system for vehicles currently located at the Plaquemine branch. (R. Doc. 37 at 3). Maintenance history for vehicles owned by Defendant are kept electronically with a third-party vendor until eighteen (18) months after disposal of the vehicle. (R. Doc. 37 at 3). Maintenance history for vehicles leased by Defendant are kept by the leasing provider until two (2) years after the lease period. (R. Doc. 37 at 3). Defendant also represents that the only record it maintains regarding which driver is assigned to which vehicle is "contemporaneous information regarding the drivers assigned to the vehicles currently in operation at a particular branch." (R. Doc. 37 at 3). Lastly, Defendant represents both that it has no information regarding which vehicle(s) were operated by Plaintiff from August 2014 through July 2016 because it maintains only contemporaneous information regarding which drivers are assigned to which vehicles, and that it cannot determine whether the vehicles operated by Plaintiff from August 2014 through July 2016 are still being used at the Plaquemine branch. (R. Doc. 37 at 3-4).

The purpose for which Plaintiff seeks documentation regarding vehicle repair requests is to support his contention that his vehicle repair requests were treated differently from the vehicle repair requests of other non-disabled, non-veteran employees. In order to prove this, Defendant would have to provide Plaintiff with information regarding which vehicles were at the Plaquemine branch during the period in question, who operated those vehicles, what repair requests were made, and which driver submitted each request, and the resolution of the repair request, including the timing thereof. Defendant represents under signature of counsel that it maintains no information that would allow it to identify which vehicles were operated by Plaintiff from August 2014 through July 2016, and that it cannot determine whether the vehicles Plaintiff operated are still being used at the Plaquemine branch. (R. Doc. 37 at 3-4). By extension, Defendant also cannot identify which vehicles other non-disabled, non-veteran

employees operated nor whether the vehicles operated by other non-disabled, non-veteran employees are still at the Plaquemine branch.

Based on the representations made by Defendant, the question as it pertains to vehicle repair requests is not one of proportionality, but rather possibility. Given the information available from Defendant as represented in its Supplemental Memorandum (R. Doc. 37), Defendant maintains no information responsive to Plaintiff's request for vehicle repair records. If Defendant does not maintain records in its usual course of business that would reflect vehicle repair requests made by Plaintiff, on the one hand, and those made by other non-disabled, non-veteran employees, on the other, which is what Defendant has represented to the Court, there is simply nothing for the Court to compel.[4]

### iii. Stop Work Authority Documents

Plaintiff also alleges that his exercise of stop work authority was treated differently from that of other non-disabled, non-veteran employees. (R. Doc. 12 at ¶¶ 35, 40, 41). Plaintiff also propounded document production requests regarding the exercise of stop work authority.[5] The Court has already determined the relevance of the exercise of stop work authority in the first section, to the extent that information is contained in the personnel files of Plaintiff or his comparator employees. To the extent Defendant has in its possession documentary information regarding the exercise of stop work authority by Plaintiff or his comparators previously identified, that information is relevant and discoverable.

---

[4] To be clear, the Court's opinion regarding vehicle repair requests is rooted in Defendant's representations that the information sought by Plaintiff is not maintained by Defendant and, therefore, there is nothing to be produced responsive to Plaintiff's request for vehicle repair requests. The parties have agreed at the November 27, 2018 hearing that approximately four (4) vehicles were maintained at the Plaquemine branch during the time of Plaintiff's employment. If Defendant were able to identify which drivers submitted which vehicle repair requests (i.e., work orders) for the vehicles in operation at the Plaquemine branch between August 2014 and July 2016, that information would be discoverable, and production would be proportional to the needs of the case.
[5] *See, e.g.*, Request for Production No. 48, 58, 59, 60, 118.

Defendant represented in briefing that it produced its internal company policy regarding the use of stop work authority by its employees, and that it previously informed Plaintiff that it did not have in its possession any "transcripts" reflecting stop work authority orders by drivers. (R. Doc. 25 at 6). At oral argument, the Court inquired as to whether Defendant's search for documents pertaining to the exercise of stop work authority was limited to "transcripts," or whether Defendant searched all possible types of documents. Counsel for Plaintiff drew attention to an excerpt of the deposition of Mr. Durand included in Plaintiff's Memorandum in Support. (R. Doc. 23-1 at 7). Therein, in response to a question posed regarding where the "documents related to the Stop Work Authority" are kept, Mr. Durand responds that said documents are kept in Defendant's "URSS system." (R. Doc. 23-1 at 7). Counsel for Defendant represented in briefing as well as at oral argument that Mr. Durand misunderstood the question and that there are no documents regarding the exercise of stop work authority kept by Defendant in the usual course of business.

Given the conflict between Defendant's representations to the Court and the excerpted testimony of Mr. Durand's deposition, the Court finds it appropriate to require Defendant to certify that it has no documents, whether in the form of transcripts or otherwise, and whether kept in the URSS System or otherwise, that reflect the exercise of stop work authority by Plaintiff, Vaughn, Fields, Jackson, or Stone. Should Defendant determine after appropriate inquiry that there are, in fact, documents pertaining to the exercise of stop work authority by Plaintiff, Vaughn, Fields, Jackson, or Stone, Defendant shall produce any and all said documents within fourteen (14) days of the date of this Order.

### iv. Assets/Liabilities

Plaintiff seeks to compel responses to document production requests pertaining to Defendant's assets and liabilities, arguing the information is relevant to his claim for punitive damages. (R. Doc. 23-1 at 13-14).[6] Defendant objects on the grounds of confidentiality and relevance, and requests that, in the event production is ordered, the production is limited to the time period that is the subject matter of this litigation. (R. Doc. 25 at 8-9). Defendant also suggested at oral argument that the information sought by Plaintiff was publicly available by way of filings with the SEC. Generally speaking, 42 U.S.C. § 1981a contemplates the possibility of a punitive damages award where a "complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Plaintiff's Second Amended Complaint seeks an award of punitive damages. (R. Doc. 12 at 18).

"Under federal law, evidence of a defendant's financial worth and ability to pay may be admissible for the purpose of evaluating the amount of punitive damages that should be awarded." *U.S. E.E.O.C. v. Denham Springs Pub. Co.*, 2012 WL 262268, at *2-3 (M.D. La. Jan. 27, 2012) (citing cases). The Court agrees with Plaintiff that information regarding Defendant's financial position is relevant to his claim for punitive damages and, therefore, discoverable. Furthermore, the Court has independently confirmed that certain financial information regarding Defendant is publicly available, which calls into doubt Defendant's argument regarding confidentiality, especially given the existence of the Protective Order in this litigation.

---

[6] *See, e.g.*, Request for Production Nos. 94 and 95. At the November 27, 2018 hearing on the motions, counsel for Plaintiff certified that the purpose of his request for Defendant's financial information was limited in relevance to Plaintiff's punitive damages claim.

11

Having determined the relevance and discoverability of Defendant's financial status, the analysis turns to the relevant time period for same. Plaintiff alleges that he was employed with Defendant from September of 2013 through July of 2016, and seeks financial information regarding net profits and losses for 2013 through 2017. (R. Doc. 23-4 at 27). The purpose of punitive damages is not to compensate a plaintiff for past wrongs, but rather to punish the defendant for having committed a wrong and to deter future wrongful actions. *See Schroeder v. Greater New Orleans Federal Credit Union*, 2012 WL 6020228, at *5 (E.D. La. Dec. 3, 2012) (citing *Cooper Indus. v. Leatherman Tool*, 532 U.S. 424, 432 (2001)). To that end, a defendant's financial status has some bearing on the amount of punitive damages that may deter future wrongful actions.

Courts do not seem to have established a universally-applicable relevant timeframe for financial documents of a defendant in the context of punitive damages. *Compare, e.g., Roberts v. C.R. England, Inc.*, 2018 WL 1305058, at *2 (D. Utah Mar. 12, 2018) (limiting relevant financial documents to only the "most recent"), *with*, *U.S. E.E.O.C. v. Denham Springs Pub. Co.*, 2012 WL 262268, at *2-3 (M.D. La. Jan. 27, 2012) (compelling production of financial documents from 2007-2010, the three years prior to the institution of litigation).[7] This Court finds that both approaches have some merit, and that production of the Defendant's financial documents for the most recent three-year period of time is appropriate for several reasons. First, the most recent documents are the most relevant due to the deterrent purpose of punitive damages. As punitive damages are not meant to compensate a plaintiff for a wrong committed against him, the time period of the wrong has little relevance to the question of punitive damages. Second, a three-year

---

[7] Upon review of the docket in the *Denham Sprints Pub.* matter, Plaintiff alleged that she was terminated in January of 2007, such that the financial documents compelled were from the three years after the date of termination, which also happened to be the three years prior to filing suit.

12

period of financial documents will provide the fact finder with a more accurate picture of a defendant's overall financial position, especially in a situation where a defendant may have had a single good—or bad—financial year. The most recent financial documents for a three-year period of time adequately contemplates the purpose of punitive damages for which those documents are sought, balanced with proportionality and relevancy considerations as outlined herein.

As it pertains to the actual types of documents, Plaintiff seeks "any and all documents that support, contradict, or related to defendant's net profit/loss." (R. Doc. 23-4 at 27). This is overly broad as written, potentially including substantial amounts of irrelevant documents. The purpose of punitive damages is to deter a defendant from future wrongs by imposing a punishment that corresponds with the financial position of that defendant. In the *Denham Springs Pub. Co.* case, the Court compelled production of the defendant's "annual reports, financial statements and federal income tax returns." 2012 WL 262268 at *3. The Court agrees with this scope of financial documents.[8] Accordingly, within fourteen (14) days of the date of this Order, Defendant shall produce its annual reports, financial statements, and federal income tax returns for 2015, 2016, and 2017.

### v. Video Recordings

Plaintiff seeks to compel Defendant to produce any "video recordings of the plaintiff at the defendant's Plaquemine branch for July 6, 2016." (R. Doc. 23-1 at 12). Defendant responded that it was "not currently aware of any existing responsive information. (R. Doc. 23-9 at 4). Defendant then represented in briefing that responses have already been produced, or there is no responsive information. (R. Doc. 25 at 4). At the November 27, 2018 hearing, Defendant

---

[8] The Court notes that Defendant's SEC filings are publicly available, as advised by counsel for Defendant at the November 27, 2018 hearing.

represented that there were no video recordings responsive to Plaintiff's requests, but Plaintiff insisted that video recordings must exist. In support of his assertion, Plaintiff suggested that cameras were placed throughout the facility and, therefore, there must be video recordings responsive to this request.

Based on the representations of Defendant, there is nothing for the Court to compel. Defendant does not object to the production of video recordings, but rather represents that there is no such responsive information. Should there be any video recordings, they could be relevant and discoverable, but the Court cannot order the production of something the producing party suggests does not exist. To satisfy Plaintiff and provide a foundation should any responsive video recordings later be found to exist, the Court will order a qualified representative of United Rentals to provide a sworn certification within fourteen (14) days of the date of this Order that no responsive video recordings exist.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion for an Order Compelling Discovery (R. Doc. 23) is **GRANTED IN PART** and **DENIED IN PART** in accordance with the body of this Order.

**IT IS FURTHER ORDERED** that Defendant shall make its supplemental production and provide its signed certification in accordance with the foregoing within fourteen (14) days of the date of this Order.

Signed in Baton Rouge, Louisiana, on December 11, 2018.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**